**JAY v. WHITESIDE et al.**

No. 2596.

Court of Civil Appeals of Texas. Eastland.

Oct. 24, 1947.

Rehearing Denied Nov. 14, 1947.

Robert E. Bowers, of Breckenridge, succeeded F. D. Wright, of Cisco (deceased), for appellant.

Turner & Seaberry, of Eastland, for appellees.

GRAY, Justice.

This is a suit filed in the District Court of Comanche County, Texas, by appellant, Miss Sally Hope Jay, against appellees, for the alleged breach of an agreement between appellant and appellee John C. Plott, by the terms of which appellant was to care for said Plott during the remainder of his lifetime. The agreement was made early in 1937 and was terminated during the latter part of 1945. At the beginning, no written contract was made and the exact terms of the verbal agreement were not very definite. But on August 29, 1945, the parties entered into a written agreement, which, however, was soon thereafter terminated, and one of the main controversies here is as to which of the parties breached it.

In 1937, appellee Plott, a widower 80 years of age, was Nursery Inspector in the lower Rio Grande Valley for the State Department of Agriculture. His home was at San Benito and seems to have been a six-roo. house of good construction and was comfortably furnished. His wife had died there in 1935.. Appellant was a single woman about 39 or 40 years younger than Mr. Plott and lived with her mother, a widow, at Sipe Springs in Comanche County, Texas. Appellant had a good education and was well trained for secretarial duties. Mr. Plott had formerly been in business in Sipe Springs and the two families had been intimate friends and neighbors for many years. During the summer of 1937, upon invitation of Mr. Plott, appellant and a Miss Whiteside, a niece of Mr. Plott, visited him in his home for about two months. Being in need of a housekeeper, Mr. Plott suggested that they make their home with him, be his housekeepers and assist him in his work as Nursery Inspector. He also suggested that his niece operate a beauty shop and Miss Jay a knitting shop in his home. Miss Whiteside finally decided to return to Sipe Springs and continue to live with her mother, whereupon Mr. Plott took them back to Sipe Springs in his car. Thereafter, after further discussion and consultation with relatives, Miss Jay agreed to return with him to his home and did so. The understanding seems to have been that Miss Jay was to be the housekeeper and assist him in making his reports, to care

for him in sickness and in health and to treat him with kindness and consideration, and to share in his estate at his death. Mr. Plott was to pay all expenses and whatever she might be able to earn aside from her duties to him would be hers. In pursuance of the latter agreement, she did open and operate a knitting class in his home and later a chicken business on the premises. Mr. Plott financed these enterprises for her and she deposited the proceeds and profits in the bank to her own account. A few months after Miss Jay returned to San Benito, she was joined by her mother, who continued to live with them until 1945, Mr. Plott paying her living expenses and medical bills. Mr. Plott also gave Miss Jay and her mother some trips outside the State and paid all the expenses incident thereto. The parties seemed to have been very congenial and satisfied for a year or so.

In 1938, Miss Jay wanted a more definite agreement as to what she was to receive from Mr. Plott's estate at his death. The result was that he executed a will naming his nephew, J. W. Whiteside, of Comanche County, executor, and devising and bequeathing to Miss Jay considerable real and personal property. About two years later, upon the insistence of Miss Jay, Mr. Plott made a second will with the same executor (defendant in this suit) in which he devised and bequeathed to Miss Jay all of his estate. Said wills were conditioned upon Miss Jay continuing to perform all of the duties aforesaid, and treating him with kindness and consideration until his death.

In March 1943, Mr. Plott was transferred by the Department of Agriculture to the Arlington District in the Fort Worth area. Having sold his home at San Benito, he bought a block of 2.47 acres of land near Arlington, which he subdivided into four large lots. On one of them he erected a substantial home at a cost of about $7,000. In the building, he used some old material belonging to Mrs. Jay, which he had trucked from Sipe Springs. Miss Jay and her mother continued to live with him in the new home and on the same terms and conditions as formerly. But their relations became less congenial. Miss Jay wanted him to enter into a written contract and execute a new will with her as executrix.

Mr. Plott complained that Miss Jay had become quarrelsome and abusive and was aided and abetted in this by her mother. Finally, on August 29, 1945, they together went to an attorney, had him prepare, and they executed a contract in writing, which continued their relationship. Mr. Plott also executed a new will with Miss Jay as independent executrix, and also conveyed to her the home in Arlington and a vacant lot out of the block he had previously purchased. Further reference will be made later in this opinion to the contents of said instruments and the alleged breach of the contract, which form the real basis for this lawsuit.

Without the knowledge of appellant, Mr. Plott had on May 8, 1944, at Comanche, Texas, executed another will, revoking all former wills and devising and bequeathing all his property to his heirs, naming them, with appellee J. W. Whiteside as independent executor. However, since this will was superseded by the will and contract of August 29, 1945, and no rights are here asserted thereunder, it passes out of the case.

Within a few days after August 29, 1945, Mr. Plott drove his car to the home of appellee J. W. Whiteside, near Sipe Springs, appellant and her mother continuing to live for some time in the home at Arlington. Appellant then sold the property at Arlington deeded to her by Mr. Plott for a total of $10,150. She also sold the furnishings therein for $200 or $250, the proceeds of which Mr. Plott permitted her to keep. They then also returned to Sipe Springs to a home they owned there.

On October 20, 1945, appellee Plott executed a warranty deed to appellee Whiteside conveying to him two tracts of land in Comanche County. He also wrote on the face and back of the contract and will executed at Arlington on said August 29, 1945, a repudiation of same. Thereafter on October 27, 1945, he executed another will, revoking all prior wills, devising and bequeathing to appellee Whiteside his entire estate, naming said Whiteside as independent executor, the consideration for said instruments being that said Whiteside care for him during the remainder of his life. Soon thereafter appellant filed this suit.

The case was tried before the court without aid of a jury. The record is very voluminous. The court was liberal in the admission of evidence and few objections were made, the seeming purpose being to develop the case fully and to get before the court every fact and circumstance that might be helpful in arriving at a correct disposition of the matter. Plaintiff pleaded the facts herein above set out and many incidental matters. She alleged full compliance by herself with all the conditions of her employment. She prayed that said contract of August 29, 1945, be established and confirmed; that the deed of appellee Plott conveying to appellee Whiteside the land in Comanche County, and all of the transfers of stocks, bonds and cash to Whiteside be set aside and held for naught; that she be granted specific performance of her contract; or in the alternative, living expenses for one year, and in addition, money or property equivalent to $7,500; that she recover of appellee Whiteside exemplary damages in the sum of $50,000; that if the property so conveyed and transferred to Whiteside could not be delivered, then she have a joint and several judgment against each of said defendants for $50,000; and for appointment of a receiver for said property. Defendants answered by numerous special exceptions, general denial, and pleaded facts which if established, would show harsh and cruel treatment by plaintiff, breach of said contract and failure of consideration; a design by plaintiff and her mother to mulch him of the property he had acquired during his wife's lifetime; undue influence and overreaching by plaintiff and her brother-in-law attorney in securing said contract, constructive fraud, coercion, and cross action for certain personal property, including an automobile, alleged to have been converted by plaintiff.

It would serve no useful purpose here and unduly prolong this opinion to attempt to discuss in detail all of the testimony in the case. We think that what may have occurred prior to August 29, 1945, becomes largely immaterial, since the contract of that date on its face purports to have been a settlement as to all matters prior thereto. However, the evidence was conflicting as to whether the property conveyed on said date by appellee Plott to Miss Jay was in settlement for past services rendered; Miss Jay contended that it was a settlement, and Mr. Plott contended that the deeds which he executed on said date were an outright gift to her. His contention was that at said time he owed her nothing and that she had been fully paid for all services rendered to that date. The said contract contained several significant provisions:

(a) "Sally Hope Jay hereby agrees to take care of John C. Plott for the remainder of his life time, keeping him in sickness and in health and looking after him and his wants and desires, being kind and considerate to him."

(b) Said John C. Plott agreed to take care of all living expenses of himself and Sally Hope Jay. Sally Hope Jay agreed to care for John C. Plott, keeping house, cook, and attend him in health or sickness and assist him in any manner that she could in attending to business, until his death. For this service John C. Plott agreed to will to Sally Hope Jay all of his remaining property, both real and personal, of which he was vested at the date of his death.

(c) "However, it is definitely understood that John C. Plott retains the entire and sole right to control, sell, dispose of and use the proceeds therefrom in any manner that he may desire during his remaining days."

(d) We quote further:

"Should this agreement be not satisfactory to John C. Plott at the end of one year from this date, then he will be at liberty to declare this arrangement at an end and will not be bound thereby save and except to convey to Sally Hope Jay an additional amount of property of the approximate value of the above described 2.47 acres of land, and said Sally Hope Jay will accept same as complete satisfaction for her services for this one year trial period. However, if said services of Sally Hope Jay are satisfactory to John C. Plott at the end of the one year trial period, then she will be entitled to all of said property at his death as set out above."

The repudiation by John C. Plott of said contract of August 29, 1945, is as follows:

Endorsement on front page:

"See repudiation on reverse side of this instrument.

"John C. Plott"

Endorsement on back:

"The State of Texas

"County of Comanche

· "Know All Men by These Presents: That I, John C. Plott, having heretofore on the 29th day of August, 1945, executed the agreement and contract on the reverse side hereof, under the domination and influence of Sally Hope Jay and her mother and her brother-in-law, in Tarrant County, Texas, here and now repudiate the same as not my will and desire, and say that it never was my free will and desire, but was done under the influence of those persons closely guarding and surrounding me, and insisting on me doing this and overreaching me in the execution of this instrument and contract and agreement and I now repudiate and request that it be held for naught.

"It is without consideration. And I supported these people for years in the past and have given them a home in Tarrant County. I desire that they keep that home that I have given them, but I repudiate this contract and agreement.

"John C. Plott"

Acknowledged by John C. Plott before Jessie E. Horner, Notary Public, Comanche County, Texas, on the 20th day of October, 1945.

On the same date a repudiation of the will executed by John C. Plott to Sally Hope Jay on August 29, 1945, was written on said will and duly acknowledged before said Jessie E. Horner, Notary Public.

All exceptions by both plaintiff and defendant were overruled, and the court proceeded to hear the evidence, at the conclusion of which, he rendered judgment as follows: (1) The above mentioned contract of August 29, 1945, was cancelled, as was also the will made by John C. Plott on said date; (2) the conveyance by John C. Plott to J. W. Whiteside of the two tracts of land in Comanche County, as well as his transfer to Whiteside of stocks, bonds and personal property on October 20, 1945, was sustained; (3) John C. Plott was decreed a recovery of the automobile in controversy; (4) appointment of a receiver was denied; (5) plaintiff, Sally Hope Jay, was granted a recovery of $300 against Plott for services rendered subsequent to the breach of said contract of August 29, 1945; (6) plaintiff Sally Hope Jay was denied all recovery as against defendant J. W. Whiteside. Plaintiff duly excepted to said judgment and gave notice of appeal to this court, which appeal was perfected.

Upon motion of appellant, the trial court filed findings of fact and conclusions of law. The findings of fact are: (a) Subsequent to August 29, 1945, plaintiff breached her agreement to take care of John C. Plott for the remainder of his life, keeping him in sickness and in health and looking after him and his wants and desires, being kind and considerate to him. This breach was of the essence of the contract, constituted a failure of consideration of the contract on the part of plaintiff, for which reason same should be cancelled. (b) Plaintiff rendered defendant John C. Plott services subsequent to August 29, 1945, of the reasonable value of $300. (c) The conveyance of the land and the transfer of the personal property by John C. Plott to J. W. Whiteside were not the result of duress or undue influence and were and are valid. (d) Under the contract itself, John C. Plott had the right to convey said land and to transfer the said personal property to J. W. Whiteside. (e) John C. Plott owned the automobile in question and is entitled to possession thereof. (f) Preliminary to the findings set out above, the court found as to the execution of the aforesaid contract of August 29, 1945, and the repudiation thereof written thereon by John C. Plott on October 20, 1945, and the same finding as to the said will executed by John C. Plott on August 29, 1945, and the repudiation thereof; that on October 27, 1945, John C. Plott executed another will before two witnesses in all things conforming to the law, wherein he expressly revoked the will of August 29, 1945. The conclusions of law followed the findings of fact as set out above.

■■ The trial judge, as the trier of the facts, was the judge of the credibility of the witnesses and the weight to be given to their testimony. He studied their demeanor, and from the great mass of testi-

mony, was peculiarly fitted to weigh the same, discard the irrelevant and immaterial parts thereof, and to reach sound findings of fact. If his findings were based upon competent evidence, reversible error not otherwise appearing, the judgment must be affirmed.

We shall now undertake a brief review of the evidence in an effort to determine whether the findings of the trial court and the judgment based thereon are supported by competent evidence. It will be borne in mind that the evidence on all the material issues was sharply contradictory.

We shall first consider whether there was competent evidence to justify cancellation of the said contract of August 29, 1945. Defendant Plott testified that for some time prior to said date the plaintiff and her mother had rendered his existence almost unbearable. That Miss Jay had repeatedly expressed dissatisfaction with their arrangements up to said time and demanded a contract that would more definitely and securely fix her rights; that the night before said contract and will were executed, Miss Jay was hysterical and told Mr. Plott that unless he agreed to execute a contract that he might not see her again and conveyed to him the impression that if he refused to execute a contract, she might take her own life. That he did not sleep a wink during all the night and that during the following day when the said contract and will were prepared and executed, he was physically and mentally at a low ebb; that arriving at the office of the said attorney who drew said instruments, he did not outline to said attorney what was to be their contents, but simply told him he wanted a contract that was fair to both parties; that before the said contract was completed, Miss Jay and the said attorney conferred privately and apart from himself; that the lights in said office were dim and he did not read the said contract or will; that they were not read to him and that he did not understand the contents of same when he executed them; that he did not know that he was signing a will; that in said contract, it was provided that he should deed the home place at Arlington, which they valued at about $7,500, and a vacant lot valued at about $1,650 to Miss Jay in satisfaction of past

services rendered to him; that as a matter of fact, the deed conveying said two tracts of land were outright gifts to Miss Jay; that at said time he owed her nothing and that she had been fully paid for all past services to him, but that he ratified and confirmed said gifts and Miss Jay soon thereafter sold the said two tracts for a total of $10,150, which she kept, and also sold some of Mr. Plott's household and personal effects for from $200 to $300, which she was allowed to keep.

That upon their return to Arlington after execution of said contract and will, appellee Plott expressed to Miss Jay his dissatisfaction with the said contract and told her that it was unilateral and unfair to him; that he did not know at the time of signing same that it contained several important provisions; that the State Department of Agriculture having been compelled to dispense with his services in the Arlington area, he decided to return to San Benito for a time in hope of being permitted again to take up his work as Nursery Inspector in said territory; that Miss Jay was to accompany him and the car was loaded preparatory to making the trip, when a rather angry discussion took place between them as to a basket which he had prepared to take. Miss Jay had demanded that he get another basket, which he refused to do, stating that he was tired and worn out and that if she wanted another basket she could get it herself. This she refused to do and also informed Mr. Plott that she would not accompany him on the trip. He thereupon asked her for the car keys, which she refused to give him, applying to him the epithets of "damned buzzard" and "damned jackass." He then took from his pocket a key which he had had made without her knowledge and started to drive away; that Miss Jay told him to go to hell. He changed his course and drove to the home of J. W. Whiteside, near Sipe Springs, one of the defendants herein, instead. Mr. Plott also testified that on an occasion about the same time Miss Jay stated to him that he was now on a contract and hooked and for him to see if he could break it. The foregoing evidence was weakly contradicted, except that Miss Jay could not remember whether or not she told him to go to hell.

In arriving at the conclusion that plaintiff (appellant) had breached her contract, the trial court no doubt took into consideration the relative ages of the parties and the fact that at the time of the alleged breach, said John C. Plott was almost ninety years of age, and his health and eyesight impaired. Said Plott had testified that for months, appellant and her mother had made his life almost unbearable; that appellant habitually quarreled at him and applied to him vile and humiliating epithets; that she refused to accompany him to San Benito, where he hoped to be again gainfully employed, repeating said epithets, refusing to give him the car key, and telling him "to go to hell." The trial court found that kind and considerate treatment of the defendant by plaintiff was of the essence of the contract, which plaintiff had breached, wherefore cancellation of same was decreed. The court gave effect to the evidence showing such breach and we cannot disturb his conclusions by substituting our own judgment as to the credibility of the witnesses and the weight to be given to their testimony.

The finding that "the conveyance of the land and the transfer of the personal property owned by John C. Plott from him to J. W. Whiteside were not the result of duress and undue influence, and were and are valid," was strongly supported by the evidence. In fact, there was no evidence of probative force to the contrary. Even the contract on which appellant sought to rely and enforce expressly allowed John C. Plott to retain complete control of his property, to sell and dispose of same as he saw fit, and to retain and enjoy the proceeds of any sale or sales.

As to ownership of the automobile involved, it was in evidence that John C. Plott had bought and paid for same and the title and registration were in his name. Shortly after the parties had returned to Sipe Springs and after Mr. Plott had taken up his residence with appellee Whiteside, the evidence showed that Mr. Plott permitted appellant to use the automobile for the benefit of her mother, who was ill and might need to make trips to her doctor's office, but appellant was not to remove said automobile from Sipe Springs. Appellant wholly failed to show any title to same in herself.

The said contract of August 29, 1945, expressly gave to appellee Plott one year within which to repudiate same, and that if so repudiated, he should deed or transfer to appellant property of the value of $7,500 as pay for her services during said trial period. Said contract was repudiated in writing on October 20, 1945. Repudiation of same and its cancellation by the court removed the binding force of same, but the evidence shows that appellant rendered some service to appellee Plott after its breach by appellant. The parties remained friendly, and after Mr. Plott took up his residence with appellee Whiteside, appellee Plott visited appellant and her mother at intervals. The service so rendered by appellant amounted to less than two months. In addition to the proceeds from the sales of real estate and personal property, which he gave her, appellant had a hospital bill at Gorman amounting to $80, which he paid. Appellant had the continuous use of his automobile. The record does not show that she had ever delivered said automobile to Mr. Plott. Under all the facts and circumstances, we think that the allowance of $300 by the court to appellant for said extra services was very liberal and we do not feel inclined to disturb it.

When the court cancelled said contract of August 29, 1945, in favor of appellee Plott, appellant's plea for specific performance failed. Likewise, her prayer for appointment of a receiver for the property failed when it was found and decreed that no undue influence or duress entered into the execution of the deeds and transfers by appellee Plott to appellee Whiteside, and that said deeds and transfers were and are valid. Having disposed of the main and controlling issues between the parties, we deem it unnecessary to discuss some of the minor matters raised. We have reached the conclusion that the findings and the judgment of the trial court had sufficient support in the evidence, and no reversible error appearing, it becomes our duty to affirm the judgment.

The judgment of the trial court is affirmed.